IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

DEBORAH VIERA, et al.,

           Plaintiffs,

v.                             CIVIL ACTION NO.  ED CV:08-00182 JRG (JCRx)

JAY CHEHAIBER, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the plaintiffs' First Request for Default Judgment [Docket 47]. For the following reasons, the Request is **GRANTED**.

**I.**    **Background**

This case was brought by two women claiming they were defrauded into signing a promissory note, for no consideration, in a home-refinancing transaction. The clerk has entered a default against the only remaining defendants. The only remaining issue is whether default judgment is now appropriate.

    *A.*    *Facts*

        *1.*    *The Refinancing*

In September 2006, plaintiff Deborah Viera fell behind on her mortgage payments. Viera's sister, an employee of defendant Chehaiber & Sons Corporation ("Chehaiber & Sons"), referred Viera to defendant Jay Chehaiber ("Chehaiber"), the company's owner. Viera contends Chehaiber

"convinced" her to refinance her mortgage through a "sham sale" to her mother, plaintiff Rose Marie Perez. (Compl. ¶ 14.)

Under this "sham sale," Viera transferred the title of the property to her mother, but retained possession and agreed to continue paying the mortgage. Viera asserts she was ignorant of the refinancing process, and that she relied on Chehaiber to act as an intermediary. "[F]acing the potential loss of her home," she "had to trust [Chehaiber] and follow their instructions through the refinance process." (Compl. ¶ 15.)

### 2. *The Loan*

In October 2006, Viera and Perez went through with the refinancing. Viera's existing mortgage in the amount of $409,018.90 was paid off. The sale price of the property was recorded at $540,000.00. National City Mortgage Company financed two new loans on the property: a first mortgage for $432,000.00 and a second mortgage for $108,000.00.

### 3. *The Note*

The plaintiffs allege that, at the closing, Chehaiber "slipped a $126,500.00 unsecured promissory note from [Viera] to Amity Enterprise Inc. into the loan documents" (the "note"). (Compl. ¶ 17.) Trusting Chehaiber, Viera signed the note at the loan signing, without being given any consideration. According to Viera, Amity Enterprises is "a dba registered by Defendant Chehaiber." (*Id.*) She asserts that Chehaiber "then used the [note] to make a demand on escrow for $117,250.67, the difference between the payoff of the previous mortgage and the total of the new loans, that [Viera] would have received." (*Id.*) Eastland Escrow then paid Chehaiber $117,250.67. Chehaiber signed documents on behalf of Amity Enterprises and submitted them to Eastland.

The plaintiffs maintain that they were never given copies of the loan documents, a rescission notice, or a truth-in-lending statement. They also allege that the loan documents state Viera's address as a post office box in Chino Hills, CA, which is the same address given for Amity Enterprises. Thus, they contend, "[u]sing a PO Box under [Chehaiber's] control as [Viera's] address prevented [Viera] from receiving any documents that would reveal [Chehaiber's] fraud." (Compl. ¶ 18.)

Furthermore, the plaintiffs contend that they only received copies of the loan documents after the closing, when Viera began working for Chehaiber and she discovered them at work. According to the plaintiffs, "Chehaiber promised to pay all the money back, and said he would make the mortgage payments," but that he did not. (Compl. ¶ 19.)

### B. Procedural History

#### 1. The Complaint

Viera and Perez filed the Complaint in the Central District of California on February 8, 2008. The Complaint named Chehaiber, Chehaiber & Sons, Eastland Escrows, Inc. ("Eastland"), National City Mortgage Company ("National City"), and Does 1 through 10 as defendants. The four-count Complaint asserts federal and state law claims. The federal claims arise under the Truth in Lending Act ("TILA"), 15 U.S.C. 1640(e), the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1601, and the Real Estate Settlement Procedures Act ('RESPA"), 12 U.S.C. § 2601 *et seq.* The state law claims are for negligence and fraud.

#### 2. Service on the Defendants

Eastland Escrows was served process on February 26, 2008, and National City Mortgage was served on March 18, 2008. Jay Chehaiber was served on April 1, 2008. Chehaiber & Sons were not served with process until March 27, 2009.

On August 11, 2008, the court granted in part and denied in part National City's motion to dismiss. The court dismissed the fraud claim against National City, but granted the plaintiffs leave to amend the complaint to cure that claim's deficiencies. Then, on June 25, 2009, the plaintiffs dismissed their claims against National City and Eastland.

On June 29, 2009, the clerk entered a default against Chehaiber and Chehaiber & Sons. On August 11, 2009, the plaintiffs filed their Request for Default Judgment. The plaintiffs request $469,002.68, consisting of actual damages in the amount of $117,250.67 and punitive damages in the amount of $351,752.01.

The court conducted a motion hearing on February 17, 2010. Only the plaintiffs appeared before the court. Pursuant to the court's instructions, the plaintiffs filed a supplement to their default-judgment request on February 22, 2010.

**II. Analysis**

Federal Rule of Civil Procedure 55(b) authorizes a district court to enter a default judgment against a nonappearing party. Local Rule 55-1 of the Central District of California sets forth several requirements for a plaintiff seeking a default judgment. The plaintiff must submit the following information to the court: when and against what party the default was entered; the identification of the pleading to which default was entered; whether the defaulting party is an infant or an incompetent person; whether the Servicemembers Civil Relief Act applies; and whether notice has been served on the defaulting party.

Here, the plaintiffs have satisfied both the federal and local rules. They have submitted declarations by their lawyer, Nathan Fransen, and by Viera. Fransen's declaration attests to the efforts made by him to serve process upon Chehaiber and his company and to engage them in the litigation. Viera's declaration simply realleges the facts contained in the Complaint. The plaintiffs have also submitted a declaration that Chehaiber is not in the military, as well as a memorandum in support of their default-judgment request.

*A. Piercing the Corporate Veil*

Before deciding whether to enter a default judgment against Chehaiber and Chehaiber & Sons, the court must determine whether Chehaiber may be held personally liable as a defendant in this case—in other words, whether to pierce the corporate veil.

The plaintiffs acknowledge this issue in the Complaint. They assert that Chehaiber is "the sole officer and director" of Chehaiber & Sons, and that there is "a unity of interest and ownership between Chehaiber and [his company], such that any individuality and separateness between Chehaiber and [his company] have ceased, and [Chehaiber & Sons] is the alter ego of Chehaiber in that Chehaiber has complete control over [Chehaiber & Sons], and uses [Chehaiber & Sons] for his own interests." (Compl. ¶ 9.) Chehaiber & Sons, the plaintiffs argue, is a "mere shell, instrumentality, and conduit through which Chehaiber carried on his mortgage business." (*Id.* ¶ 11.)

Because jurisdiction is based on a federal question, federal common law, rather than state law, controls. The Ninth Circuit has applied "a relatively rigorous veil-piercing standard, and ought to be placed among the circuits where it is relatively difficult to pierce the veil." Stephen B. Presser, PIERCING THE CORPORATE VEIL 3-114 to -15 (1999).

The Ninth Circuit generally applies a three-factor test for piercing the corporate veil. A court should consider (1) the amount of respect that shareholders give to the separate identity of the corporation; (2) the degree of injustice that recognizing the corporate entity would impose on the plaintiff; and (3) the fraudulent intent of the incorporators. *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1111 (9th Cir. 1979). Importantly, the court of appeals has held that "post incorporation misuse of the corporate form in appropriate cases can satisfy the fraudulent intent element." *Bd. of Trs. v. Valley Cabinet*, 877 F.2d 769, 774 (9th Cir. 1989).

The corporate veil should be pierced in this case. Based on the plaintiffs allegations, Chehaiber fraudulently used his company for personal gain. He entered into this transaction, using Chehaiber & Sons as a shield, to get Viera to sign the note. In short, Chehaiber used the corporate form to advance his fraud. This satisfies the fraudulent-intent requirement mentioned in *Valley Cabinet*.

### B. Default Judgment is Appropriate

The Ninth Circuit has identified a noninclusive list of eight factors for determining whether a default judgment should be entered. A court should consider the following: (1) the possibility of prejudice to the plaintiff if the request is denied; (2) the merits of the plaintiff's claims against the defaulting party; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was caused by excusable neglect; (7) whether the default was technical or de minimis; and (8) the strong public policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Considering each of these factors, default judgment is appropriate in this case.

On the first factor, the plaintiffs will suffer serious prejudice should the request be denied. Chehaiber apparently obtained a $117,000 note from Viera by fraud, and he has shown to be unwilling to participate in the litigation over that note. Without a default judgment, Viera will be prejudiced greatly.

Regarding the second factor, on the alleged facts, Viera's claims against Chehaiber are strong. Chehaiber fraudulently obtained the note from Viera and then attempted to conceal it from her. Examining the transaction, I do not see any nonfraudulent reason for Chehaiber's actions. Thus, the second factor weighs in favor of entering a default judgment.

Third, the complaint, while not a model of legal proficiency, is sufficient. It adequately sets forth plausible facts, which, if accepted as true, show the plaintiffs are entitled to relief.

The fourth factor weighs against default judgment. The plaintiffs are seeking a judgment in the amount of several hundred thousand dollars against a party that has not appeared.

The fifth and sixth factors are neutral. Regarding the fifth factor, material facts might very well be debatable. But Chehaiber has not appeared and has not presented any opposing factual account. On the sixth factor, there is no evidence concerning Chehaiber's reasons for failing to appear in this litigation.

As for the seventh factor, Chehaiber's default is neither technical nor de minimis. Although this lawsuit was filed over two years ago, and Chehaiber was served a year-and-a-half ago, Chehaiber has absolutely failed to appear.

Finally, the eighth factor always weighs against entering a default judgment. A decision on the merits is favored. Courts are able to more accurately allocate liability when both parties present facts and legal arguments. But where, as here, the defendant has shown that he is unwilling or

unable to appear, entering a default judgment is the only remedy to avoid an unjust result to the plaintiffs. Having considered the above factors, the court concludes that a default judgment against Jay Chehaiber and Chehaiber & Sons is appropriate.

   *C.*  *Punitive Damages*

Finally, the plaintiffs seek punitive damages for fraud under California law. California Civil Code section 3294(a) provides that punitive damages are permitted "[i]n an action for the breach of an obligation not arising from contract where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice" against the plaintiff. Under that statute, fraud is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property . . . or otherwise causing injury." Cal. Civ. Code § 3294(c)(3).

The plaintiffs assert that punitive damages equal to three times their compensatory damages are both constitutional and reasonable under the facts of this case. In *State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 424-26 (2003), the Supreme Court explained that excessive punitive damage awards may violate due process. While it has never drawn a clear line of demarcation, the Court has expressed its view that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 425. California courts consider three factors in determining a proper punitive-damage award: (1) the nature of the defendant's conduct; (2) the requirement that the amount of punitive damages bear a reasonable relationship to the plaintiff's harm; and (3) the amount that is necessary to punish the defendant and discourage future wrongful conduct. *Walker v. Signal Companies, Inc.*, 149 Cal. Rptr. 119, 126 (Cal. App. 1978).

      A punitive award of $351,752.01 is appropriate in this case.  First, Chehaiber's conduct was particularly reprehensible.  He fraudulently obtained a promissory note from the plaintiffs, which resulted in the plaintiffs losing their home.  Second, a three-to-one punitive-to-compensatory ratio is reasonable in light of the harm inflicted on the plaintiffs.  And third, this amount is appropriate and necessary to punish Chehaiber and deter future wrongdoing.

### III.  Conclusion

      The court awards the plaintiffs $469,002.68, which is the sum of $117,250.67 in actual damages and $351,752.01 in punitive damages, jointly and severally, against Jay Chehaiber and Chehaiber & Sons Corporation.

      The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

      ENTER:     March 16, 2010

*Joseph R. Goodwin*
Joseph R. Goodwin, Chief Judge